# EXHIBIT "A"

MAKEFIELD EXECUTIVE QUARTERS
SUITE 402A
301 OXFORD VALLEY ROAD
YARDLEY, PA 19067
215-493-8287 · FAX 215-493-1567
www.fegleylaw.com

420 SANDALWOOD AVENUE
HAMILTON SQUARE, NJ 08619
609-587-2696
*Please reply to the Yardley office*

THE FEGLEY LAW FIRM
BUSINESS · EMPLOYMENT · PERSONAL INJURY

November 27, 2019

**VIA ELECTRONIC FILING**

The Honorable Kevin McNulty
Martin Luther King Building &
U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

RE: Mark Weinberger v ESI Cases and Accessories, Inc., et al
Civil Action No. 19-13988

Dear Judge McNulty:

As you know, the plaintiff, Mark Weinberger, presently has a motion pending to enforce a settlement agreement with the defendants. With supplemental memoranda, I have forwarded to the Court revised drafts of the settlement agreement as my discussions with defense counsel have continued over the fine points of certain language in the document.

While I am happy to inform the Court that the parties have ironed out all but one phrase while the motion has been pending, my client and I are frustrated by the defendants' delay and long silences in between communications in what should have been resolved in a matter of days.

I have attached the latest draft of the settlement agreement with the disputed language in Section 6 highlighted. In the last version from the defendants, defense counsel inserted the terms "home related" and "fitness devices and accessories" into the clarification of competition. Mr. Weinberger objects to these terms as overbroad. While he worked for ESI, the company has distributed only mobile and audio accessories. "Home related" is far broader including everything from mops and buckets to window treatments. Fitness could include a home gym. Mr. Weinberger has asked to have these terms stricken or, alternatively, to have the additional sentence in red included which narrows "home related" to audio products and doorbells and "fitness devices and accessories" to fitness watches and trackers. Despite a phone call and emails, defense counsel has not yet agreed to one or the other and the limbo continues.

Accordingly, I am presenting this final draft and issue to the Court requesting resolution of Section 6 and an order compelling consummation of the settlement agreement.

Sincerely,

SCOTT I. FEGLEY

Enclosure
cc: Mark Weinberger
Paul K. Silverberg, Esq. (via email only)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CASE NO. 19-CV-13988-KM-MAH

MARK WEINBERGER,

Plaintiff,

VS.

ESI CASES AND ACCESSORIES, INC. and
ELLIOT AZOULAY,

Defendants.
_________________________________________/

# SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Settlement Agreement and Mutual General Release ("Agreement") is made by Plaintiff, MARK WEINBERGER, including his heirs, representatives, attorneys, successors, and assigns ("Plaintiff"), and Defendants, ESI CASES AND ACCESSORIES, INC., including its representatives, attorneys, agents, successors, and assigns, ("ESI") and ELLIOT AZOULAY, including his heirs, representatives, attorneys, successors, and assigns ("Defendants" and/or "Defendant") (collectively Plaintiff and Defendants are referred to as the "Parties").

1. The Parties hereto recognize that Defendants do not admit liability to Plaintiff, or to anyone else as a result of the matters set forth in the pleadings of the Plaintiff in the above entitled cause. Plaintiff represents this is payment in full except as otherwise expressly reserved in Section 3 below.

2. ESI CASES AND ACCESSORIES, INC. shall pay Plaintiff the total sum of $575,694.00 as set forth below, and other good and valuable consideration as described below (the "Payment"). Payment shall be made in the following manner:

(a) a check in the amount of $230,277.60 made payable to Scott I. Fegley, P.C. and sent within fourteen (14) days of defendants' receipt of the signed Agreement. Defendants shall issue Scott I. Fegley, P.C, a separate Form 1099 for this payment.

(b) a check in the amount of $345,416.40 made payable to Mark Weinberger and sent within fourteen (14) days of defendants' receipt of the signed Agreement. Defendants shall issue Mark Weinberger a separate Form 1099 for this payment.

3. In exchange for the mutual covenants and promises, contained herein, the Parties, including its representatives, attorneys, agents, successors, and assigns, hereby remise, acquit, release, satisfy and discharge, each other and their representatives, attorneys, agents, successors, assigns, predecessors and successors in interest, parents, subsidiaries, affiliates, divisions and related companies, and their past, present and future shareholders, officers, directors, supervisors, managers, trustees and employees (collectively, "Releasees"), in their individual and official capacities, and their heirs and legal representatives, of and from, any and all claims and demands, past, present or future, known or unknown, and all manner of action and actions, causes of action, suits, administrative proceedings, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, torts, trespasses, damages, judgments, executions, warranties, claims and demands whatsoever, in law or in equity, which the Parties had or now have, cause or thing whatsoever from the beginning of the world to the execution of this Agreement, including, but not limited to, any and all claims which were actually asserted, or might have been asserted or could have been asserted by Plaintiff.

Without limiting the Release, the Release includes: (i) any and all claims growing out of, resulting from, related to, or connected in any way to Plaintiff's relationship and/or

employment, and the termination/separation thereof, including but not limited to any and all claims for discrimination, harassment of any kind, retaliation, unequal pay, whistle-blowing, breach of contract, rescission, promises, claims under the Employee Retirement Income Security Act of 1974, as amended, torts of all kind, including but not limited to misrepresentation, negligent or otherwise, fraud, defamation, libel, battery, assault, slander, intentional infliction of emotional distress, interference with an advantageous business relationship, negligent hiring, negligent retention, discrimination, claims or rights under state and federal whistle-blower legislation, the Consolidated Omnibus Budget Reconciliation Act, the Family and Medical Leave Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Fair Labor Standard Act, the Older Workers Benefit Protection Act, the Equal Pay Act, Title VII of the Civil Rights Act of 1964, as amended, the State Civil Rights Act, state wage claims and any other claim of any kind; (ii) a waiver by Plaintiff of any rights of action and administrative and judicial relief which Plaintiff might otherwise have available in the state and federal courts arising from Plaintiff's relationship or employment with Defendants, including all common law claims and claims under federal and state constitutions, statutes and regulations and federal executive orders and county and municipal ordinances and regulations.

The Parties hereby expressly reserve and exclude from this Release only the plaintiff's vested rights and sums held within the ESI Cases and Accessories Employee Stock Ownership Plan. Nothing in this settlement shall change the plaintiff's account and Plaintiff shall be provided the required annual reports in accordance with the Plan to the extent they have not been previously provided. Nothing in this paragraph creates new obligations or liability on ESI with regard to the Plan.

The Parties hereby also expressly reserve and exclude from this Release only any

violations by Plaintiff of his Confidentiality Agreement with ESI on July 24, 2008, after his resignation.

4. As part of this Agreement, Plaintiff specifically waives any present and future claim for reinstatement or employment with Defendants or their subsidiaries or related entities at any time in the future. The Parties hereto specifically recognize that substantial questions of fact and law exist as to any possible claim or claims (legal, equitable or otherwise) by Plaintiff and therefore, as part of this Settlement, Plaintiff further specifically agrees, as a condition of Plaintiff's receipt and retention of the sums provided for herein, not to seek employment with Defendants or any of Defendants' subsidiaries or related entities at any time in the future and not to discuss his claims and the issues related thereto with any current or former employee of Defendants or any related entity. Defendants are under no obligation or duty to consider Plaintiff for re-employment in the future.

5. The Parties agree that laptop, phone number 973-590-6691 and the smartphone is owned and shall be the property of Defendant, ESI CASES AND ACCESSORIES, INC. Plaintiff has already turned over the laptop and smartphone and shall otherwise cooperate with Defendant's property rights.

6. Plaintiff has signed a Confidentiality Agreement with ESI CASES AND ACCESSORIES, INC. on July 24, 2008, which Plaintiff acknowledges is valid and enforceable. As part of the consideration of this settlement, the Parties agree that the non-compete term therein shall be extended to September 24, 2022. However, for purposes of clarification, the phrase "any company or entity engaged in business similar to that of the Company" shall mean only companies or entities engaged in the licensing, sale or distribution of mobile, audio, home related, and fitness devices and accessories, including licensing associated with for the mobile, audio and fitness market. "Home related" shall mean solely

home audio products and doorbells. "Fitness devices and accessories" shall mean solely fitness watches and trackers.

7. It is further agreed and understood that ESI shall make the settlement payments to Plaintiff's counsel as set forth in Section 2 above to be held in trust pending the filing of a stipulation of dismissal with prejudice by counsel for plaintiff within ten (10) days of the receipt of the aforementioned payments (a) and (b).

8. Plaintiff agrees to assume full responsibility for, and to hold Defendants harmless for, the payment of any federal, state, or local taxes with respect to the Payment, and Plaintiff shall be responsible for, and hold Defendants harmless for, and/or reimburse Defendants, for any and all taxes, including any interest or penalty assessed by any taxing entity against Defendants.

9. Should any party breach any provisions or paragraphs of this Agreement, the non-breaching party shall have all rights, remedies and/or causes of action available at law or in equity to enforce the terms of this Agreement. In any action to enforce this Agreement, the prevailing party shall be entitled to recover its attorneys' fees and costs.

10. It is further understood and agreed that the total sum paid as set forth above, and the other good and valuable consideration provided for herein, are not mere recitals, but are the consideration for this Agreement and the full and final release effected thereby. Plaintiff hereby represents and warrants that he has entered into this Settlement Agreement of his own free will and accord and in accordance with Plaintiff's own judgment, and after consultation with Plaintiff's attorneys. Plaintiff hereby states that Plaintiff and Plaintiff's counsel have made a full and independent investigation of all the facts and representations relating to this agreement and release and therefore states that Plaintiff has not been induced to enter into this Agreement by any statement, fact or representation of any kind or character on the part of

Defendants, or on the part of Defendants' agents, attorneys, servants, employees or representatives other than those specifically set out herein. Plaintiff specifically states that Plaintiff is executing this Agreement knowingly and voluntarily.

11. Plaintiff acknowledges that Plaintiff has thoroughly read the entire Agreement, and specifically acknowledges the following:

a) Plaintiff understands the language of the settlement agreement and release, and that any questions Plaintiff may have had during Plaintiff's review of the Agreement were explained to Plaintiff's satisfaction and understanding by retained legal counsel of his choosing;

b) Plaintiff understands that this is a mutual waiver and mutual release;

c) Plaintiff's waiver of rights and claims in this Agreement is in exchange for good and valuable consideration; and

d) Plaintiff has been advised to consult, and has consulted or had adequate opportunity to consult, legal counsel of his choosing prior to executing this Agreement.

12. It is further agreed that each party shall bear their own costs and attorneys' fees, incurred in the above entitled suit and in handling the matters covered by this Settlement Agreement.

13. The Parties further agree not to disparage or make negative remarks about the other through any public statements, through any form of social media or internet communications, or any other written or oral communications to any other persons or entities. Plaintiff has been made aware of a claim by ESI as to a posting on Glassdoor regarding Defendant and Plaintiff represents that he has not posted anything negative about ESI on Glassdoor (or any other) negative posts regarding Defendants (or its employees) anywhere. Prior to the Payment being released from his counsel's trust account, Plaintiff will provide a

written sworn statement reaffirming that he has not posted anything negative regarding ESI (or its business or employees). Plaintiff shall not make, or ask, suggest or recommend that others make any negative internet or social media posts regarding Defendants.

14. The Parties agree that the Agreement shall not become effective or enforceable until the Court enters the Final Order of Dismissal.

15. Each party acknowledges that, except as expressly set forth herein, no representations of any kind or character have been made by any other party or Parties, agents, representatives, or attorneys, to induce the execution of this Agreement.

16. This Agreement cannot be modified, altered or changed except by a writing signed by the Parties wherein specific reference is made to this Agreement.

17. This Agreement constitutes a single integrated contract expressing the entire agreement of the Parties hereto regarding resolution of non-wage and hour claims.

18. Language of all parts of this Agreement shall be construed as a whole according to its fair meaning. The Parties agree that this Agreement is the product of joint authorship and negotiation, and in the event of any ambiguity the Agreement shall not be construed against any party.

19. This Agreement may be executed in multiple counterparts, each of which shall constitute an original, and all of which shall constitute one single Agreement. Faxed transmissions and/or copies of the signature block shall be deemed enforceable.

[This space intentionally left blank]

AGREED AND ACCEPTED this ____ day of December, 2019.

**Plaintiff:**

______________________________
Name: Mark Weinberger

AGREED AND ACCEPTED this ____ day of December, 2019.

**Defendant: ESI CASES AND ACCESSORIES, INC.**

______________________________
By:
President

AGREED AND ACCEPTED this ____ day of December, 2019.

**Defendant:**

______________________________
Name: Elliot Azoulay

# EXHIBIT "B"

fegleylaw

NEWTOWN
BUSINESS ASSOCIATION
2016 BUSINESS OF THE YEAR

WINNER
BEST ATTORNEY
Scott I. Fegley, Esq.
2017
Happening List

Please consider the environment before printing.

**From:** Paul Silverberg - www.pkslegal.com <psilverberg@pkslegal.com>
**Sent:** Monday, December 9, 2019 1:04 PM
**To:** Scott Fegley <scott@fegleylaw.com>
**Subject:** RE: Weinberger

Your gamenship of filing with the court bothered our client as they believe there is no deal until we get the terms done. You rejected our terms, so there is no finished deal. I am trying, like you, to make a deal happen, but I don't have authority until the CEO approves the deal – which has not happened.

Regards,

PAUL K. SILVERBERG, ESQ.

SILVERBERG & WEISS, PA
1290 WESTON ROAD, SUITE 218 - WESTON, FLORIDA 33326
954.384.0998 - MAIN | 305.280.0095 - MIAMI | 561.651.0998 - BOCA RATON | 813.803.0998 - TAMPA
954.384.5390 - FAX | 813.200.1005 - FAX | 239.580.5390 - FAX
EMAIL: psilverberg@pkslegal.com | WEB: www.pkslegal.com

SILVERBERG & WEISS
ATTORNEYS AT LAW

**ATTENTION:** *The information contained in this E-mail message is privileged and confidential information intended only for the use of the individual(s) named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please contact the sender by reply E-mail and destroy all copies of the original message. Any tax advice contained in this communication, including attachments, is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing or recommending to another party any matters addressed herein.*

**From:** Scott Fegley <scott@fegleylaw.com>
**Sent:** Monday, December 9, 2019 12:49 PM
**To:** Paul Silverberg - www.pkslegal.com <psilverberg@pkslegal.com>
**Subject:** Weinberger

Mr. Silverberg,

How long does it take to come to an agreement on one sentence? Your last communication was on November 20, three weeks ago. If we do not reach an agreement **and receive payment** before the court conference now

scheduled for January 17, I will seek interest on the $575,694.00 from September 26. Even at 3%, that will be an additional $5,756.94 and I will be asking for 6%.

Scott Fegley


*The Fegley Law Firm*
*301 Oxford Valley Road*
*Suite 402 A*
*Yardley, PA 19067*

*iness, Employmer … Personal Injury,*
*ve You Peace of M*

*(215) 493-8287*
*w.fegleylaw.cc*
*.com/fegleylaw*
*om/in/scottfegl*
*om/fegleylaw*


NEWTOWN
BUSINESS ASSOCIATION
2016 BUSINESS OF THE YEAR

WINNER
BEST ATTORNEY
Scott I. Fegley, Esq.
2017
Happening List

Please consider the environment before printing.

# EXHIBIT "C"

## Scott Fegley

**From:** Paul Silverberg - www.pkslegal.com <psilverberg@pkslegal.com>
**Sent:** Wednesday, December 18, 2019 9:26 AM
**To:** Scott Fegley
**Subject:** RE: Weinberger
**Attachments:** Weinberger aff 11 22 19.docx; Settle Agreement 12-18-19.docx

In the interest of a settlement and finalizing the relationship, our client proposes the attached revised settlement agreement and affidavit from your client. The affidavit is accurate to our knowledge, if your client disagrees with anything therein, please let us know so it can be updated/corrected. As your client is no longer an employee, we are utilizing your representation to communicate our desire for the same to him.

CONFIDENTIAL SETTLEMENT COMMUNICATION

Regards,

PAUL K. SILVERBERG, ESQ.

SILVERBERG & WEISS, PA
1290 WESTON ROAD, SUITE 218 - WESTON, FLORIDA 33326
954.384.0998 - MAIN | 305.280.0095 - MIAMI | 561.651.0998 - BOCA RATON | 813.803.0998 - TAMPA
954.384.5390 - FAX | 813.200.1005 - FAX | 239.580.5390 - FAX
EMAIL: psilverberg@pks l.com | WEB: www.p com

SILVERBERG & WEISS
ATTORNEYS AT LAW

**ATTENTION:** *The information contained in this E-mail message is privileged and confidential information intended only for the use of the individual(s) named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please contact the sender by reply E-mail and destroy all copies of the original message. Any tax advice contained in this communication, including attachments, is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing or recommending to another party any matters addressed herein.*

**From:** Paul Silverberg - www.pkslegal.com
**Sent:** Wednesday, December 18, 2019 8:32 AM
**To:** Scott Fegley <scott@fegleylaw.com>
**Subject:** RE: Weinberger

This email is in the interest in attempting to resolve this matter before the New Year.

A significant roadblock to the settlement is that your client wiped our client's company phone clean – destroying company property. As you believe there is a deal in place, we declare a breach. If we cannot resolve this breach, we will notify the Court and proceed with a claim against him. Our client believes that this was done to harm the company in a loss of information and hide his actions. Your client is on notice.

I will send a separate e-mail as to a proposal to resolve this matter entirely.

Regards,

PAUL K. SILVERBERG, ESQ.

SILVERBERG & WEISS, PA
1290 WESTON ROAD, SUITE 218 - WESTON, FLORIDA 33326
954.384.0998 - MAIN | 305.280.0095 - MIAMI | 561.651.0998 - BOCA RATON | 813.803.0998 - TAMPA
954.384.5390 - FAX | 813.200.1005 - FAX | 239.580.5390 - FAX
EMAIL: psilverberg@pkslegal.com | WEB: www.pkslegal.com

SILVERBERG & WEISS ATTORNEYS AT LAW

*ATTENTION: The information contained in this E-mail message is privileged and confidential information intended only for the use of the individual(s) named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please contact the sender by reply E-mail and destroy all copies of the original message. Any tax advice contained in this communication, including attachments, is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing or recommending to another party any matters addressed herein.*

**From:** Scott Fegley <scott@fegleylaw.com>
**Sent:** Monday, December 9, 2019 2:30 PM
**To:** Paul Silverberg - www.pkslegal.com <psilverberg@pkslegal.com>
**Subject:** RE: Weinberger

Your client should understand that there is a deal, and has been since Sept 26, as the three primary terms (amount, phone number, and extension of non-compete) have never been disputed. The resorts to the court have been as a result of the unprecedented silence for weeks after each attempt to finalize the language of the written agreement. If he thinks the court is going to void the entire deal over the last remaining sentence in dispute, then he obviously does not understand the case law.

And even though we rejected your last proposed draft of the sentence in Section 6, why wait weeks before responding to our counter-proposal? So who is involved in gamesmanship?

I understand only Mr. Azoulay has the authority to approve and sign the settlement agreement, but my client finds his behavior more retaliatory and vindictive. Again, if we cannot wrap this up on our own, I will ask the court to include interest on the judgment since September 26.

*The Fegley Law Firm*
*301 Oxford Valley Road*
*Suite 402 A*
*Yardley, PA 19067*

*For Business, Employment and Personal Injury,*
*We Give You Peace of Mind*

*(215) 493-8287*
*www.fegleylaw.com*
*facebook.com/fegleylaw*
*linkedin.com/in/scottfegley*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CASE NO. 19-CV-13988-KM-MAH

MARK WEINBERGER,

Plaintiff,

VS.

ESI CASES AND ACCESSORIES, INC. and
ELLIOT AZOULAY,

Defendants.

______________________________________/

**SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE**

This Settlement Agreement and Mutual General Release ("Agreement") is made by Plaintiff, MARK WEINBERGER, including his heirs, representatives, attorneys, successors, and assigns ("Plaintiff"), and Defendants, ESI CASES AND ACCESSORIES, INC., including its representatives, attorneys, agents, successors, and assigns, ("ESI") and ELLIOT AZOULAY, including his heirs, representatives, attorneys, successors, and assigns ("Defendants" and/or "Defendant") (collectively Plaintiff and Defendants are referred to as the "Parties").

1. The Parties hereto recognize that Defendants do not admit liability to Plaintiff, or to anyone else as a result of the matters set forth in the pleadings of the Plaintiff in the above entitled cause. Plaintiff represents this is payment in full except as otherwise expressly reserved in Section 34 below.

Formatted: Highlight

~~1.~~2. Plaintiff Mark Weinberger represents that prior to filing this action, he never asked or otherwise demanded payment of the amount due hereunder and that ESI or Azoulay never refused payment prior to his filing of this litigation. In fact, he represents that he forgot

about this Bonus/Commission/Override being due until the time of his resignation and first raised the issue via filing this action.

~~2.~~3. ESI CASES AND ACCESSORIES, INC. shall pay Plaintiff the total sum of $575,694.00 as set forth below, and other good and valuable consideration as described below (the "Payment"). Payment shall be made in the following manner:

(a) a check in the amount of $230,277.60 made payable to Scott I. Fegley, P.C. and sent within fourteen (14) days of defendants' receipt of the signed Agreement. Defendants shall issue Scott I. Fegley, P.C, a separate Form 1099 for this payment.

(b) a check in the amount of $345,416.40 made payable to Mark Weinberger and sent within fourteen (14) days of defendants' receipt of the signed Agreement. Defendants shall issue Mark Weinberger a separate Form 1099 for this payment.

~~3.~~4. In exchange for the mutual covenants and promises, contained herein, the Parties, including its representatives, attorneys, agents, successors, and assigns, hereby remise, acquit, release, satisfy and discharge, each other and their representatives, attorneys, agents, successors, assigns, predecessors and successors in interest, parents, subsidiaries, affiliates, divisions and related companies, and their past, present and future shareholders, officers, directors, supervisors, managers, trustees and employees (collectively, "Releasees"), in their individual and official capacities, and their heirs and legal representatives, of and from, any and all claims and demands, past, present or future, known or unknown, and all manner of action and actions, causes of action, suits, administrative proceedings, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, torts, trespasses, damages, judgments, executions, warranties, claims and demands whatsoever, in law or in equity, which the Parties had or now have, cause or thing

whatsoever from the beginning of the world to the execution of this Agreement, including, but not limited to, any and all claims which were actually asserted, or might have been asserted or could have been asserted by Plaintiff.

Without limiting the Release, the Release includes: (i) any and all claims growing out of, resulting from, related to, or connected in any way to Plaintiff's relationship and/or employment, and the termination/separation thereof, including but not limited to any and all claims for discrimination, harassment of any kind, retaliation, unequal pay, whistle-blowing, breach of contract, rescission, promises, claims under the Employee Retirement Income Security Act of 1974, as amended, torts of all kind, including but not limited to misrepresentation, negligent or otherwise, fraud, defamation, libel, battery, assault, slander, intentional infliction of emotional distress, interference with an advantageous business relationship, negligent hiring, negligent retention, discrimination, claims or rights under state and federal whistle-blower legislation, the Consolidated Omnibus Budget Reconciliation Act, the Family and Medical Leave Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Fair Labor Standard Act, the Older Workers Benefit Protection Act, the Equal Pay Act, Title VII of the Civil Rights Act of 1964, as amended, the State Civil Rights Act, state wage claims and any other claim of any kind; (ii) a waiver by Plaintiff of any rights of action and administrative and judicial relief which Plaintiff might otherwise have available in the state and federal courts arising from Plaintiff's relationship or employment with Defendants, including all common law claims and claims under federal and state constitutions, statutes and regulations and federal executive orders and county and municipal ordinances and regulations.

The Parties hereby expressly reserve and exclude from this Release only the plaintiff's vested rights and sums held within the ESI Cases and Accessories Employee Stock Ownership

Plan. Nothing in this settlement shall change as to the plaintiff's account and Plaintiff shall be provided the required annual reports in accordance with the Plan to the extent it has not been previously provided. Nothing in this paragraph creates new obligations or liability on ESI with regard to the plan.

Formatted: Highlight

The Parties hereby expressly reserve and exclude from this Release only any violations by Plaintiff of his Confidentiality Agreement with ESI on July 24, 2008, after his resignation notice.

Formatted: Highlight

54. As part of this Agreement, Plaintiff specifically waives any present and future claim for reinstatement or employment with Defendants or their subsidiaries or related entities at any time in the future. The Parties hereto specifically recognize that substantial questions of fact and law exist as to any possible claim or claims (legal, equitable or otherwise) by Plaintiff and therefore, as part of this Settlement, Plaintiff further specifically agrees, as a condition of Plaintiff's receipt and retention of the sums provided for herein, not to seek employment with Defendants or any of Defendants' subsidiaries or related entities at any time in the future and not to discuss his claims and the issues related thereto with any current or former employee of Defendants or any related entity. Defendants are under no obligation or duty to consider Plaintiff for re-employment in the future.

65. The Parties agree that laptop, phone number 973-590-6691 and the smartphone is owned and shall be the property of Defendant, ESI CASES AND ACCESSORIES, INC. Plaintiff has already turned over the laptop and smartphone and shall otherwise cooperate with Defendant's property rights.

76. Plaintiff has signed a Confidentiality Agreement with ESI CASES AND ACCESSORIES, INC. on July 24, 2008, which Plaintiff acknowledges is valid and enforceable. As part of the consideration of this settlement, the Parties agree that the non-

compete term therein shall be extended to September 24, 2022. However, for purposes of clarification, the phrase "any company or entity engaged in business similar to that of the Company" shall mean only companies or entities engaged in the sale or distribution of accessories for mobile and audio devices .

Formatted: Highlight

Formatted: Font color: Red

87. It is further agreed and understood that ESI shall make the settlement payments to Plaintiff's counsel as set forth in Section 2 above to be held in trust pending the filing of a stipulation of dismissal with prejudice by counsel for plaintiff within ten (10) days of the receipt of the aforementioned payments (a) and (b).

98. Plaintiff agrees to assume full responsibility for, and to hold Defendants harmless for, the payment of any federal, state, or local taxes with respect to the Payment, and Plaintiff shall be responsible for, and hold Defendants harmless for, and/or reimburse Defendants, for any and all taxes, including any interest or penalty assessed by any taxing entity against Defendants.

109. Should any party breach any provisions or paragraphs of this Agreement, the non-breaching party shall have all rights, remedies and/or causes of action available at law or in equity to enforce the terms of this Agreement. In any action to enforce this Agreement, the prevailing party shall be entitled to recover its attorneys' fees and costs.

110. It is further understood and agreed that the total sum paid as set forth above, and the other good and valuable consideration provided for herein, are not mere recitals, but are the consideration for this Agreement and the full and final release effected thereby. Plaintiff hereby represents and warrants that he has entered into this Settlement Agreement of his own free will and accord and in accordance with Plaintiff's own judgment, and after consultation with Plaintiff's attorneys. Plaintiff hereby states that Plaintiff and Plaintiff's counsel have made a full and independent investigation of all the facts and representations relating to this

agreement and release and therefore states that Plaintiff has not been induced to enter into this Agreement by any statement, fact or representation of any kind or character on the part of Defendants, or on the part of Defendants' agents, attorneys, servants, employees or representatives other than those specifically set out herein. Plaintiff specifically states that Plaintiff is executing this Agreement knowingly and voluntarily.

121. Plaintiff acknowledges that Plaintiff has thoroughly read the entire Agreement, and specifically acknowledges the following:

a) Plaintiff understands the language of the settlement agreement and release, and that any questions Plaintiff may have had during Plaintiff's review of the Agreement were explained to Plaintiff's satisfaction and understanding by retained legal counsel of his choosing;

b) Plaintiff understands that this is a mutual waiver and mutual release;

c) Plaintiff's waiver of rights and claims in this Agreement is in exchange for good and valuable consideration; and

d) Plaintiff has been advised to consult, and has consulted or had adequate opportunity to consult, legal counsel of his choosing prior to executing this Agreement.

132. It is further agreed that each party shall bear their own costs and attorneys' fees, incurred in the above entitled suit and in handling the matters covered by this Settlement Agreement.

143. The Parties further agree not to disparage or make negative remarks about the other through any public statements, through any form of social media or internet communications, or any other written or oral communications to any other persons or entities. Plaintiff has been made aware of a claim by ESI as to a posting on shall remove from Glassdoor regarding Defendant and Plaintiff represents that such positing is not related to him and that

he has not posted anything on Glassdoor (and any other) posts regarding Defendants (or its employees) prior to the Payment being released from his counsel's trust account. Prior to the Payment being released from the trust account, Plaintiff will provide a written sworn statement that he has not posted anything regarding ESI (or its business or employees) to be utilized by ESI. **Plaintiff shall not make, or ask, suggest or recommend that others make any internet or social media posts regarding Defendants.** Except for the 17 paragraph affidavit dated September 25, 2019 sent by Plaintiff's counsel to Defendant's counsel via e-mail on November 11, 2019, Plaintiff represents that he has not provided any written affidavit or any other information as to Defendants to anyone considering potential or in litigation with Defendants, including but not limited to Eric Gross.

**Formatted:** Highlight

**Formatted:** Highlight

**Formatted:** Highlight

**Formatted**

154. The Parties agree that the Agreement shall not become effective or enforceable until the Court enters the Final Order of Dismissal.

165. Each party acknowledges that, except as expressly set forth herein, no representations of any kind or character have been made by any other party or Parties, agents, representatives, or attorneys, to induce the execution of this Agreement.

176. This Agreement cannot be modified, altered or changed except by a writing signed by the Parties wherein specific reference is made to this Agreement.

187. This Agreement constitutes a single integrated contract expressing the entire agreement of the Parties hereto regarding resolution of non-wage and hour claims.

198. Language of all parts of this Agreement shall be construed as a whole according to its fair meaning. The Parties agree that this Agreement is the product of joint authorship and negotiation, and in the event of any ambiguity the Agreement shall not be construed against any party.

2019. This Agreement may be executed in multiple counterparts, each of which shall

**constitute an original, and all of which shall constitute one single Agreement. Faxed transmissions and/or copies of the signature block shall be deemed enforceable.**

[SIGNATURES ON NEXT PAGE]

AGREED AND ACCEPTED this day of ~~October~~ December, 2019.

**Plaintiff:**

______________________________
Name: Mark Weinberger

AGREED AND ACCEPTED this day of ~~October~~ December, 2019.

**Defendant: ESI CASES AND ACCESSORIES, INC.**

______________________________
By:
President

AGREED AND ACCEPTED this day of ~~October~~ December, 2019.

**Defendant:**

______________________________
Name: Elliot Azoulay

# EXHIBIT "D"

AFFIDAVIT OF MARK WEINBERGER

STATE OF ____________ )
)
COUNTY OF __________ )

I, Mark Weinberger, being duly sworn, deposes and states as follows:

1. I am the former Executive Vice President and Vice President of Licensing and Business Development of E.S.I. Cases and Accessories ("ESI"). I was employed with ESI in this capacity during the entire duration of Eric Goss's employment with ESI.

2. I have known Eric Goss for over 25 years and consider Mr. Goss to be a personal friend.

3. I did not participate in the negotiation of Mr. Goss's terms of employment with ESI and I have no knowledge of the terms of Mr. Goss's employment agreement with ESI.

4. While we were both employed by ESI, Mr. Goss did not report to me and I was not responsible for supervising or otherwise reviewing or examining Mr. Goss's work.

5. Aside from my personal compensation, I have no knowledge of any compensation (commissions or otherwise) paid by ESI to any of its employees, including Mr. Goss.

6. During Mr. Goss's employment with ESI, I has no discussions with Mr. Goss concerning any outside business and I did not ask Mr. Goss if he was involved with any business other than ESI.

7. I was only in ESI's New York office approximately ___ times while ESI employed Mr. Goss.

8. I have no knowledge of the reasons or events that caused ESI to terminate Mr. Goss.

Dated: ____________, 2019
New York, New York

______________________
Mark Weinberger

Sworn to before me this
___ day of ________, 2019

____________________
NOTARY PUBLIC

# EXHIBIT "E"

**Scott Fegley**

| | |
|---|---|
| **From:** | Paul Silverberg - www.pkslegal.com <psilverberg@pkslegal.com> |
| **Sent:** | Wednesday, December 18, 2019 3:51 PM |
| **To:** | Scott Fegley |
| **Subject:** | RE: Weinberger |

I spoke to my client (and I will prepare) – but the election is your #3 with the extension of time.
We go back to the original non-compete without clarification and leave for another day what actually constitutes competition with ESI.

We will have a final deal, when its signed.

Regards,

PAUL K. SILVERBERG, ESQ.

SILVERBERG & WEISS, PA
1290 WESTON ROAD, SUITE 218 - WESTON, FLORIDA 33326
954.384.0998 - MAIN | 305.280.0095 - MIAMI | 561.651.0998 - BOCA RATON | 813.803.0998 - TAMPA
954.384.5390 - FAX | 813.200.1005 - FAX | 239.580.5390 - FAX
EMAIL: psilverberg@pks[illegible].com | WEB: www.p[illegible].com

SILVERBERG & WEISS ATTORNEYS AT LAW

**ATTENTION:** *The information contained in this E-mail message is privileged and confidential information intended only for the use of the individual(s) named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please contact the sender by reply E-mail and destroy all copies of the original message. Any tax advice contained in this communication, including attachments, is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing or recommending to another party any matters addressed herein.*

**From:** Scott Fegley <scott@fegleylaw.com>
**Sent:** Wednesday, December 18, 2019 3:37 PM
**To:** Paul Silverberg - www.pkslegal.com <psilverberg@pkslegal.com>
**Subject:** RE: Weinberger

#2 per your client, not mine. But as I said, we can leave it in if it gets Mr. Azoulay to sign the agreement. It is of no importance once the agreement is signed.

#4 This remains the sticking point. Mr. Weinberger informs me he was only involved with mobile or audio, so we agreed to limitations with regard to home audio and mobile fitness trackers. However, "home related" or "fitness" are simply too broad.

There are four options to resolving this last sticking point:

1. You accept the limiting language as proposed in my last draft

2. You provide a list of every home or fitness product manufactured or distributed by ESI you claim Mr. Weinberger was involved with in licensing, marketing or selling at ESI. If Mr. Weinberger confirms, we can attach as an addendum to the settlement agreement.
3. We go back to the original non-compete without clarification and leave for another day what actually constitutes competition with ESI. By the way, NY law is very favorable for the employee. So is NJ.
4. We let the court decide in January. My guess is the court will go with #3. The court will see that we have been very flexible in proposing a number of options to resolve this point while ESI keeps expanding the issues

As far as the phone wiping, Mr. Weinberger is adamant that he did not delete any ESI related texts or emails from the phone. Moreover, even assuming for the sake of argument he did, ESI uses a Windows 365 cloud based system. Accordingly, ESI would still have access to the emails through the cloud backup or on the laptop. And the fact that Mr. Weinberger returned the phone in September and you are raising this allegation now is troubling. The phone has been in your client's possession for three months and could have been tampered with by Mr. Azoulay or someone else at ESI. Your client will have the burden of proof with regard to this allegation. As I stated in my prior email, ESI will have to prove not only that Mr. Weinberger deleted company related information but that such deleted information caused harm to ESI. Has one customer complained of missing data in the last three months? Is there one missing communication ESI can identify that involved Mr. Weinberger and should have been on his phone?

Mr. Weinberger takes this accusation of destroying ESI property most seriously and will not be intimidated into broadening the scope of the non-compete (which is the only real issue in contention). Should ESI not have proof of its allegation, and simply uses it as an excuse to justify non-payment, we will seek interest, attorney fees and whatever other costs may be recovered as Rule 11 sanctions.

Scott Fegley

*The Fegley Law Firm*
*301 Oxford Valley Road*
*Suite 402 A*
*Yardley, PA 19067*

*...iness, Employmen... Personal Injury,*
*...You Peace of M...*

*(215) 493-8287*
*...w.fegleylaw.co*
*...com/fegleylaw*
*...com/in/scottfegl...*
*...om/fegleylaw*

NEWTOWN
BUSINESS ASSOCIATION
2016 BUSINESS OF THE YEAR

WINNER
BEST ATTORNEY
Scott I. Fegley, Esq.
2017
Happening List

Please consider the environment before printing.

**From:** Paul Silverberg - www.pkslegal.com <psilverberg@pkslegal.com>
**Sent:** Wednesday, December 18, 2019 3:03 PM

# EXHIBIT "F"

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CASE NO. 19-CV-13988-KM-MAH

MARK WEINBERGER,

Plaintiff,

VS.

ESI CASES AND ACCESSORIES, INC. and
ELLIOT AZOULAY,

Defendants.
_______________________________________/

**SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE**

This Settlement Agreement and Mutual General Release ("Agreement") is made by Plaintiff, MARK WEINBERGER, including his heirs, representatives, attorneys, successors, and assigns ("Plaintiff"), and Defendants, ESI CASES AND ACCESSORIES, INC., including its representatives, attorneys, agents, successors, and assigns, ("ESI") and ELLIOT AZOULAY, including his heirs, representatives, attorneys, successors, and assigns ("Defendants" and/or "Defendant") (collectively Plaintiff and Defendants are referred to as the "Parties").

1. The Parties hereto recognize that Defendants do not admit liability to Plaintiff, or to anyone else as a result of the matters set forth in the pleadings of the Plaintiff in the above entitled cause. Plaintiff represents this is payment in full except as otherwise expressly reserved in Section 3 below.

2. ESI CASES AND ACCESSORIES, INC. shall pay Plaintiff the total sum of $575,694.00 as set forth below, and other good and valuable consideration as described below (the "Payment"). Payment shall be made in the following manner:

(a) a check in the amount of $230,277.60 made payable to Scott I. Fegley, P.C. and sent within fourteen (14) days of defendants' receipt of the signed Agreement. Defendants shall issue Scott I. Fegley, P.C, a separate Form 1099 for this payment.

(b) a check in the amount of $345,416.40 made payable to Mark Weinberger and sent within fourteen (14) days of defendants' receipt of the signed Agreement. Defendants shall issue Mark Weinberger a separate Form 1099 for this payment.

3. In exchange for the mutual covenants and promises, contained herein, the Parties, including its representatives, attorneys, agents, successors, and assigns, hereby remise, acquit, release, satisfy and discharge, each other and their representatives, attorneys, agents, successors, assigns, predecessors and successors in interest, parents, subsidiaries, affiliates, divisions and related companies, and their past, present and future shareholders, officers, directors, supervisors, managers, trustees and employees (collectively, "Releasees"), in their individual and official capacities, and their heirs and legal representatives, of and from, any and all claims and demands, past, present or future, known or unknown, and all manner of action and actions, causes of action, suits, administrative proceedings, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, torts, trespasses, damages, judgments, executions, warranties, claims and demands whatsoever, in law or in equity, which the Parties had or now have, cause or thing whatsoever from the beginning of the world to the execution of this Agreement, including, but not limited to, any and all claims which were actually asserted, or might have been asserted or could have been asserted by Plaintiff.

Without limiting the Release, the Release includes: (i) any and all claims growing out of, resulting from, related to, or connected in any way to Plaintiff's relationship and/or

employment, and the termination/separation thereof, including but not limited to any and all claims for discrimination, harassment of any kind, retaliation, unequal pay, whistle-blowing, breach of contract, rescission, promises, claims under the Employee Retirement Income Security Act of 1974, as amended, torts of all kind, including but not limited to misrepresentation, negligent or otherwise, fraud, defamation, libel, battery, assault, slander, intentional infliction of emotional distress, interference with an advantageous business relationship, negligent hiring, negligent retention, discrimination, claims or rights under state and federal whistle-blower legislation, the Consolidated Omnibus Budget Reconciliation Act, the Family and Medical Leave Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Fair Labor Standard Act, the Older Workers Benefit Protection Act, the Equal Pay Act, Title VII of the Civil Rights Act of 1964, as amended, the State Civil Rights Act, state wage claims and any other claim of any kind; (ii) a waiver by Plaintiff of any rights of action and administrative and judicial relief which Plaintiff might otherwise have available in the state and federal courts arising from Plaintiff's relationship or employment with Defendants, including all common law claims and claims under federal and state constitutions, statutes and regulations and federal executive orders and county and municipal ordinances and regulations.

The Parties hereby expressly reserve and exclude from this Release only the plaintiff's vested rights and sums held within the ESI Cases and Accessories Employee Stock Ownership Plan. Nothing in this settlement shall change the plaintiff's account and Plaintiff shall be provided the required annual reports in accordance with the Plan to the extent they have not been previously provided. Nothing in this paragraph creates new obligations or liability on ESI with regard to the Plan.

The Parties hereby also expressly reserve and exclude from this Release only any

violations by Plaintiff of his Confidentiality Agreement with ESI on July 24, 2008, after his resignation.

4. As part of this Agreement, Plaintiff specifically waives any present and future claim for reinstatement or employment with Defendants or their subsidiaries or related entities at any time in the future. The Parties hereto specifically recognize that substantial questions of fact and law exist as to any possible claim or claims (legal, equitable or otherwise) by Plaintiff and therefore, as part of this Settlement, Plaintiff further specifically agrees, as a condition of Plaintiff's receipt and retention of the sums provided for herein, not to seek employment with Defendants or any of Defendants' subsidiaries or related entities at any time in the future and not to discuss his claims and the issues related thereto with any current or former employee of Defendants or any related entity. Defendants are under no obligation or duty to consider Plaintiff for re-employment in the future.

5. The Parties agree that laptop, phone number 973-590-6691 and the smartphone is owned and shall be the property of Defendant, ESI CASES AND ACCESSORIES, INC. Plaintiff has already turned over the laptop and smartphone and shall otherwise cooperate with Defendant's property rights.

6. Plaintiff has signed a Confidentiality Agreement with ESI CASES AND ACCESSORIES, INC. on July 24, 2008, which Plaintiff acknowledges is valid and enforceable. As part of the consideration of this settlement, the Parties agree that the non-compete term therein shall be extended to September 24, 2022.

7. It is further agreed and understood that ESI shall make the settlement payments to Plaintiff's counsel as set forth in Section 2 above to be held in trust pending the filing of a stipulation of dismissal with prejudice by counsel for plaintiff within ten (10) days of the receipt of the aforementioned payments (a) and (b).

8. Plaintiff agrees to assume full responsibility for, and to hold Defendants harmless for, the payment of any federal, state, or local taxes with respect to the Payment, and Plaintiff shall be responsible for, and hold Defendants harmless for, and/or reimburse Defendants, for any and all taxes, including any interest or penalty assessed by any taxing entity against Defendants.

9. Should any party breach any provisions or paragraphs of this Agreement, the non-breaching party shall have all rights, remedies and/or causes of action available at law or in equity to enforce the terms of this Agreement. In any action to enforce this Agreement, the prevailing party shall be entitled to recover its attorneys' fees and costs.

10. It is further understood and agreed that the total sum paid as set forth above, and the other good and valuable consideration provided for herein, are not mere recitals, but are the consideration for this Agreement and the full and final release effected thereby. Plaintiff hereby represents and warrants that he has entered into this Settlement Agreement of his own free will and accord and in accordance with Plaintiff's own judgment, and after consultation with Plaintiff's attorneys. Plaintiff hereby states that Plaintiff and Plaintiff's counsel have made a full and independent investigation of all the facts and representations relating to this agreement and release and therefore states that Plaintiff has not been induced to enter into this Agreement by any statement, fact or representation of any kind or character on the part of Defendants, or on the part of Defendants' agents, attorneys, servants, employees or representatives other than those specifically set out herein. Plaintiff specifically states that Plaintiff is executing this Agreement knowingly and voluntarily.

11. Plaintiff acknowledges that Plaintiff has thoroughly read the entire Agreement, and specifically acknowledges the following:

a) Plaintiff understands the language of the settlement agreement and

release, and that any questions Plaintiff may have had during Plaintiff's review of the Agreement were explained to Plaintiff's satisfaction and understanding by retained legal counsel of his choosing;

b) Plaintiff understands that this is a mutual waiver and mutual release;

c) Plaintiff's waiver of rights and claims in this Agreement is in exchange for good and valuable consideration; and

d) Plaintiff has been advised to consult, and has consulted or had adequate opportunity to consult, legal counsel of his choosing prior to executing this Agreement.

12. It is further agreed that each party shall bear their own costs and attorneys' fees, incurred in the above entitled suit and in handling the matters covered by this Settlement Agreement.

13. The Parties further agree not to disparage or make negative remarks about the other through any public statements, through any form of social media or internet communications, or any other written or oral communications to any other persons or entities. Plaintiff has been made aware of a claim by ESI as to a posting on Glassdoor regarding Defendant and Plaintiff represents that he has not posted anything negative about ESI on Glassdoor (or any other) negative posts regarding Defendants (or its employees) anywhere. Prior to the Payment being released from his counsel's trust account, Plaintiff will provide a written sworn statement reaffirming that he has not posted anything negative regarding ESI (or its business or employees). Plaintiff shall not make, or ask, suggest or recommend that others make any negative internet or social media posts regarding Defendants.

14. The Parties agree that the Agreement shall not become effective or enforceable until the Court enters the Final Order of Dismissal.

15. Each party acknowledges that, except as expressly set forth herein, no

representations of any kind or character have been made by any other party or Parties, agents, representatives, or attorneys, to induce the execution of this Agreement.

16. This Agreement cannot be modified, altered or changed except by a writing signed by the Parties wherein specific reference is made to this Agreement.

17. This Agreement constitutes a single integrated contract expressing the entire agreement of the Parties hereto regarding resolution of non-wage and hour claims.

18. Language of all parts of this Agreement shall be construed as a whole according to its fair meaning. The Parties agree that this Agreement is the product of joint authorship and negotiation, and in the event of any ambiguity the Agreement shall not be construed against any party.

19. This Agreement may be executed in multiple counterparts, each of which shall constitute an original, and all of which shall constitute one single Agreement. Faxed transmissions and/or copies of the signature block shall be deemed enforceable.

AGREED AND ACCEPTED this day of January, 2020.

**Plaintiff:**

____________________________________
Name: Mark Weinberger

AGREED AND ACCEPTED this day of January, 2020.

**Defendant: ESI CASES AND ACCESSORIES, INC.**

____________________________________
By:
President

AGREED AND ACCEPTED this day of January, 2020.

**Defendant:**

__________________________________

Name: Elliot Azoulay